JS-6

1
2
3
4
5
6                          UNITED STATES DISTRICT COURT

7                          CENTRAL DISTRICT OF CALIFORNIA

8

9    THOMAS JOHNSON,                    )  CASE NO. CV 14-06708 MMM (JCx)
                                        )
10                   Plaintiff,         )  ORDER GRANTING PLAINTIFF'S
                                        )  MOTION TO REMAND; DENYING
11                                      )  PLAINTIFF'S REQUEST FOR
                                        )  ATTORNEY FEES; DENYING
12            vs.                       )  DEFENDANTS' MOTION TO DISMISS
                                        )  AS MOOT
13   WELLS FARGO & COMPANY, INC.,       )
     doing business as WELLS FARGO      )
14   BANK, N.A. a corporation, IMTIAZ   )
     "TAZ" DADABHOY, an individual; and )
15   Does 1-50 inclusive,              )
                                        )
16                   Defendants.        )
                                        )
17   _____)

18        On July 23, 2014, Thomas Johnson filed an action in Los Angeles Superior Court against

19   Wells Fargo & Company, Inc., doing business as Wells Fargo Bank, N.A. ("Wells Fargo"),

20   Imtiaz "Taz" Dadabhoy ("Dadabhoy"), and certain fictitious defendants (collectively,

21   "defendants").[1]   Johnson asserts claims for unlawful retaliation and failure to prevent

22   discrimination, harassment and retaliation in violation of California's Fair Employment and

23   Housing Act ("FEHA"), California Government Code § 12940, *et seq.*; violation of California

24   Labor Code § 1102.5(c); wrongful termination in violation of public policy; defamation; and

25   failure to pay wages.[2]  On August 26, 2014, defendants removed the action, invoking the court's

26

27   _____

28        [1]Notice of Removal ("Removal"), Docket No. 1 (Aug. 26, 2014), Exh. A ("Complaint").

          [2]*Id.*

diversity jurisdiction under 28 U.S.C. § 1332(a).  They assert that Dadabhoy's citizenship should be disregarded as he was fraudulently joined as a defendant.[3]

On September 2, 2014, defendants filed a motion to dismiss Johnson's defamation claim.[4] They filed an amended motion to dismiss the following day.[5]  On September 3, 2014, Johnson filed a motion to remand the action to state court.[6]  The court denied defendant's original motion to dismiss as moot on September 4, 2014, given their filing of an amended motion to dismiss.[7] There are thus two motions before the court: defendants' motion to dismiss and Johnson's motion to remand.  Both motions are opposed.[8]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the motions appropriate for decision without oral argument.  The hearings calendared for November 24, 2014 are therefore vacated, and the matters taken off calendar.

## I.  FACTUAL BACKGROUND

Johnson alleges that he worked for Wells Fargo from 1994 to 2004, and again from 2008 until his allegedly wrongful termination on June 10, 2013.[9]  At the time of his termination, Johnson was a home mortgage consultant with an annual compensation package valued at

---

[3]Removal, ¶ 8.

[4]Motion to Dismiss, Docket No. 9 (Sept. 2, 2014).

[5]Amended Motion to Dismiss, Docket No. 13 (Sept. 3, 2014).

[6]Motion to Remand ("Motion"), Docket No. 16 (Sept. 3, 2014).

[7]Order Denying Motion to Dismiss As Moot, Docket No. 17 (Sept. 4, 2014).

[8]Opposition to Amended Motion to Dismiss, Docket No. 20 (Nov. 3, 2014). Opposition to Motion to Remand ("Opposition"), Docket No. 19 (Oct. 16, 2014).

[9]Complaint, ¶¶ 1, 5.

approximately $245,000.[10]  Johnson maintains he was "a top performer, consistently ranking in the top 10 of mortgage producers."[11]

Dadabhoy managed the Wells Fargo Beach Cities branch where Johnson worked.[12] Johnson asserts that he reported Dadabhoy to human resources and other management personnel within Wells Fargo because he had purportedly engaged in illegal conduct and/or directed Johnson to engage in illegal conduct.  Johnson alleged, in particular, that he filed a report in March 2014, indicating that Dadabhoy had instructed him to violate the law with respect to "the Path of Assistance" and had threatened to fire him if he refused to engage in the illegal conduct.[13]  The complaint asserts that Dadabhoy also gave Johnson improper instructions on "how to do loans," which would have resulted in violations of federal and state law; that he paid unlawful kickbacks to the junior loan officers; that he paid for strippers and prostitutes on company business trips "as part of his business expenses"; that he "included his subordinates in such activities"; and that he used cocaine on a Wells Fargo business trip.[14]  Johnson asserts that he refused to participate in the alleged kickback scheme, and that "when [he] refused to violate the bank policy, [he] was not allowed to hire junior loan officers."[15]  Johnson contends he reported Dadabhoy's conduct to Wells Fargo, and believes other employees made similar complaints about Dadabhoy.[16]  Rather than investigate the complaints, however, Wells Fargo purportedly condoned, authorized, and ratified Dadabhoy's conduct and his retaliation against Johnson.[17]

---

[10]*Id.*, ¶¶ 5, 7.

[11]*Id.*, ¶ 6.

[12]*Id.*, ¶¶ 3, 8.

[13]*Id.*, ¶ 9.  The meaning of "Path of Assistance" is not alleged.

[14]*Id.*, ¶¶ 10, 11, 13, 14.

[15]*Id.*, ¶¶ 11, 12.

[16]*Id.*, ¶¶ 13-15.

[17]*Id.*, ¶ 16.

In retaliation for his complaints, Johnson allegedly received written reprimands from Dadabhoy, which were "unfounded and baseless," and "cast[ ] [him] in a 'bad light' within Wells Fargo."[18] Johnson maintains that Wells Fargo continued to ignore his complaints and failed to protect him from retaliation by Dadabhoy.[19] On June 10, 2013, Wells Fargo terminated Johnson for allegedly violating company policy.[20] Johnson contends that the policy pursuant to which he was terminated is used subjectively as a sword to terminate employees that Wells Fargo lacks legitimate grounds to discharge.[21]

On July 23, 2014, Johnson filed this action against defendants. Defendants removed the case on August 26, 2014, contending that Dadabhoy had been fraudulently joined to defeat diversity jurisdiction under 28 U.S.C. § 1332.[22] Defendants assert that Dadabhoy is a sham defendant, and that Johnson added him for the sole purpose of destroying diversity jurisdiction.[23] Johnson's sole claim against Dadabhoy is a cause of action for defamation.

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows a defendant to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only

---

[18] *Id.*, ¶ 17.

[19] *Id.*, ¶ 18.

[20] *Id.*, ¶ 19.

[21] *Id.*

[22] Removal at 1.

[23] *Id.*, ¶¶ 8, 9.

4

state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

**B.     Whether the Court Should Remand the Action to Los Angeles Superior Court**

As noted, defendants contend the court has diversity jurisdiction to hear this action.[24] "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).[25]

_____

[24]The court does not have federal question jurisdiction to hear the action because all of Johnson's claims are state law claims that do not raise a federal question. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[25]The parties do not dispute that the amount in controversy requirement is satisfied. For purposes of this motion only, the court assumes without deciding that the amount in controversy exceeds $75,000.

5

### 1.    Wells Fargo's Citizenship

Wells Fargo is a national banking association.  National banking associations are only a citizen of the state in which their main office is "located."  See 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."); *Rouse v. Wachovia Mortgage*, 747 F.3d 707, 708 (9th Cir.2014) ("Looking to the Supreme Court's treatment of the issue and to the history and sequence of the enactment and amendment of the statute, we conclude that, under § 1348, a national bank is 'located' only in the state designated as its main office").   In the notice of removal, Wells Fargo alleges that its main office is located in South Dakota.[26]  Wells Fargo is therefore a citizen of South Dakota.

### 2.    Johnson's Citizenship

A person is a citizen of the state in which he is domiciled, i.e., the state in which he has a permanent home where he intends to remain or to which he intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").   "The status of the parties' citizenship. . . can be determined from the complaint or from other sources, including statements made in the notice of removal."  *HSBC Bank USA, NA v. Valencia*, No. 09–CV–1260–OWW–JLT, 2010 WL 546721, *2 (E.D. Cal. Feb. 10, 2010); see also *Kanter*, 265 F.3d at 857 (examining the complaint and notice of removal to determine citizenship).

Johnson alleges only that he is a resident of California.[27]   In the notice of removal, defendants assert Johnson is a California citizen.[28]  To support this contention, defendants rely on Johnson's allegations that he was a resident of California at all times relevant to this action, and

---

[26]Removal, ¶ 7.

[27]Complaint, ¶ 1.

[28]Removal, ¶ 6.

6

that he worked for Wells Fargo in California from 1994 to 2004, and again from 2008 to 2013.[29] Defendants also proffer Johnson's LinkedIn profile, which states that he worked for Accredited Home Lenders in Orange County, California from 2005-2006, and that he is currently employed by the Bank of Manhattan in Hermosa Beach, California.[30]   Johnson thus appears to have lived and worked in California for period of more than twenty years.  This evidence suffices to establish that he is a citizen of California.   See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[D]etermination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").[31]

### 3.      Dadabhoy's Citizenship

The complaint alleges that Dadabhoy is a resident of California.[32]  In the notice of removal, defendants argue only that Dadabhoy's citizenship should be disregarded; they do not contend he is a citizen of California.[33]  In their opposition, however, they concede that Dadabhoy is a citizen of California, and that the issue before the court is whether his citizenship must be disregarded because he was fraudulently joined.[34]  The court must therefore determine whether Dadabhoy was

---

[29]See Complaint, ¶¶ 1, 5.

[30]Defendants' Appendix of Evidence in Opposition to Plaintiff's Motion to Remand ("Appendix"), Docket No. 19-1 (Oct. 16, 2014), Exh. N (LinkedIn Profile of Tom Johnson).

[31]Johnson does not contend otherwise.  Although he references only his residency, the basis of his motion to remand is that his and Dadabhoy's citizenship is not diverse.

[32]*Id.*, ¶ 3.

[33]Removal, ¶ 8.

[34]Opposition at 5-6 ("The entire remand motion is premised on the false notion that Dadabhoy is a proper defendant whose California citizenship destroys diversity.  Accordingly, to the extent the only proper defendant is Wells Fargo, there is diversity of citizenship in this action sufficient to support removal jurisdiction").

fraudulently joined.   If he was, his citizenship must be disregarded in determining whether diversity jurisdiction exists; if he was not, the action must be remanded for lack of subject matter jurisdiction.

### 4.   Legal Standard Governing Fraudulent Joinder

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ."   *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."   *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined).   Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory."   *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that a removing defendant is entitled to present facts showing that joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

> "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder.   Rather, it must appear to 'a near certainty' that joinder was fraudulent.   As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . .   Thus, that a claim against the in-state defendant is insufficiently pled does not prove . . . that there is absolutely no

1  possibility that the plaintiff will be able to establish a cause of action." *Amarant v.*

2  *Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6

3  (E.D. Cal. June 18, 2013).

4      Defendants must prove fraudulent joinder by clear and convincing evidence. *Hamilton*

5  *Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.

6  1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and

7  considering summary judgment-type evidence such as affidavits and deposition testimony."

8  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the

9  Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th

10  Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765

11  F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and

12  other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008)

13  ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of

14  removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

15      Because courts must resolve all doubts against removal, a court determining whether

16  joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor."

17  *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing

18  *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful

19  possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the

20  court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate

21  that there is no possibility that the plaintiff will be able to establish a cause of action in State court

22  against the alleged sham defendant"). Given this standard, "[t]here is a presumption against

23  finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party

24  carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005,

25  1008 (N.D. Cal. 2001).

26        **5.**    **Whether Johnson Has Alleged a Non-Fanciful Defamation Claim**

27      Defendants contend Johnson's fifth cause of action for defamation against Wells Fargo and

28  Dadabhoy fails because Johnson does not plead facts sufficient to state a claim on which relief can

be granted.[35]  They argue that Johnson does not allege what Dadabhoy said, to whom he said it, when he said it, how the purported statement or statements damaged his reputation, or any facts suggesting that the statement(s) were unprivileged.  Instead, defendants assert, Johnson pleads only the legal conclusions that Dadabhoy made "unspecified false and defamatory statements" in "unidentified written reprimands and negative reviews."[36]

To prove defamation, plaintiff must show that the defendant published a false, defamatory, and unprivileged statement that had a natural tendency to injure or that caused special damage.  See *Hernandez v. First Student, Inc.*, No. CV 10-8243 SVW (FMOx), 2010 WL 5313293, *3 (C.D. Cal. Dec.16, 2010); *Smith v. Maldonado,* 72 Cal.App.4th 637, 645 (1999).  Slander is oral defamation, while libel is written defamation.  See *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1180 (2000).

The complaint alleges that defendants caused "excessive and unsolicited internal and external publications . . . of and concerning [Johnson] to third persons and to the community."[37] The persons to whom Johnson believes the statements were made are identified as "other agents and employees of . . . Wells Fargo and the community.[38]  The purportedly false and defamatory statements allegedly included accusations that Johnson "violated company policy and/or the law, engaged in misconduct, and . . . [engaged in] potential criminal activity."[39]  Johnson contends the statements were made on or before August 1, 2014, and continued to be republished at least until the complaint was filed.[40]  He pleads that all of the statements were defamatory, and were

---

[35]Removal, ¶ 9.

[36]*Id.*, ¶ 10 (citing Complaint, ¶¶ 17, 53-67).

[37]Complaint, ¶ 53.

[38]*Id.*, ¶ 53.

[39]*Id.*, ¶ 59.

[40]*Id.*, ¶ 54.

published by defendants despite knowledge that they were false and unprivileged.[41]  Johnson also alleges that he was forced and compelled to republish the false and defamatory reasons for his termination to obtain new employment.[42]  Johnson contends these allegations establish that there is a "non-fanciful possibility" he can state a claim for defamation.

Defendants counter that Johnson fails to identify a single false statement in the complaint, and instead offers "boilerplate allegations consisting of a series of generic legal conclusions" that are insufficient to state a claim for relief.[43]  This argument applies the wrong legal standard. "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder." *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998).  "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." *Id.* (quoting *Lieberman v. Meshkin, Mazandarani*, No. C-96-3344 SI, 1996 WL 732506, *1 (N.D. Cal. Dec. 11, 1996)); see also *Perez v. AT & T Co.*, 139 F.3d 1368, 1380–81 (11th Cir. 1998) (when conducting a fraudulent joinder inquiry, federal courts do not weigh the merits of plaintiff's claim but merely determine whether the claim is arguable under state law); *Mayes v. Rapport*, 198 F.3d 457, 463–64 (4th Cir. 1999) (a "glimmer of hope" that plaintiff can assert a viable claim is sufficient to preclude application of the fraudulent joinder doctrine).

In *Umamoto v. Insphere Insurance Solutions, Inc.*, No. 13-CV-0475-LHK, 2013 WL 2084475, *4-5 (N.D. Cal. May 14, 2013), the plaintiffs, both California citizens, filed an action in Santa Clara Superior Court, asserting claims for defamation, wrongful termination, and various other torts. *Id.* at *1-2.  Plaintiff Shirley Umamoto's defamation claim was premised on the fact the former employer, Insphere, had falsely stated that it was terminating her "due to performance."  Umamoto alleged that she had been forced to republish the defamatory statement concerning her termination in applications and interviews for new employment.  *Id.* at *4.

[41]*Id.*, ¶¶ 53, 57, 59, 60.

[42]*Id.*, ¶ 55.

[43]Opposition at 7-8.

1  Plaintiffs asserted the defamation claim not only against Insphere, but against a regional manager,

2  Katherine Feeny. *Id.*[44]

3       Defendants removed the action to the federal court, arguing that Feeny, a California

4  citizen, was fraudulently joined to defeat diversity jurisdiction. *Id.* at *3. While the court found

5  that as alleged, the defamation claim against Feeny would likely fail because the complaint alleged

6  that Insphere, and not Feeny, had made the statement regarding Umamoto's termination, it was

7  "not persuaded that [p]laintiffs could not allege facts showing that Feeny was the originator of . . .

8  the statement." *Id.* at *5. On this basis, it found that remand was warranted because there was

9  a "non-fanciful possibility that plaintiff c[ould] state a claim [for defamation]." *Id.* (quoting

10  *Macey*, 220 F.Supp.2d at 1117).

11       In *Morales v. Gruma Corp.*, No. CV 13-7341-CAS-FFMx, 2013 WL 6018040 (C.D. Cal.

12  Nov. 12, 2013), the court applied *Umamoto* to factual allegations that were closely analogous to

13  those in this case. Morales alleged claims for wrongful termination and various forms of disability

14  discrimination against his former employer. *Id.* at *1. He also asserted a single claim for

15  defamation against his former employer and two supervisors, Fernando Ynez and Claudia

16  Bolanos. *Id.* The complaint alleged that "all defendants, including Ynez and Bolanos, caused the

17  publication of defamatory statements, including 'expressed and implied accusations that [p]laintiff

18  violated company policy and/or the law, engaged in misconduct, and [that] expressly and

19  impliedly accus[ed] [p]laintiff of potential criminal activity.'" *Id.* at *4. Morales alleged that the

20  precise dates of publication were unknown, but he believed the statements were published "on or

21  before October 12, 2012, and continued [to be published] at least through the present." He

22  asserted that the purpose of the statements was to justify his termination. *Id.* The court found

23

24

25      [44]The claim also alleged that Feeny had told other employees that the second plaintiff, Greg

26  Umamoto, "had been put on administrative leave due to actions against the company," and "because he [had] just filed [a $15 million] suit against the company." *Id.* at *2. Because it

27  concluded that Shirley Umamoto might be able to state a claim against Feeny, the court declined

28  to determine whether Feeny was a sham defendant as to these allegations. *Id.* at *4 n. 4.

1  the allegations similar to those in *Umamoto*, and concluded that they raised a "nonfanciful

2  possibility" that Morales could state a claim for defamation in Los Angeles Superior Court.  *Id.*

3        Like the statement about termination "due to performance" in *Umamoto,* and the

4  accusations concerning violations of company policy and/or unlawful conduct in *Morales*,

5  Johnson's allegations regarding the statements purportedly made by Dadabhoy are "sufficiently

6  specific to raise a 'nonfanciful possibility' that [he] can state a claim for defamation in Los

7  Angeles Superior Court."  See *Morales*, 2013 WL 6018040 at *4; *Umamoto*, 2013 WL 2084475

8  at *4-5; see also *Webber v. Nike USA, Inc.*, No. 12-CV-00974 BEN WVG, 2012 WL 4845549,

9  *6 (S.D. Cal. Oct.9, 2012) (finding a defamation claim based on an alleged statement that plaintiff

10  was terminated for "poor performance" sufficient to show there was a "non-fanciful possibility

11  that a California state court could conclude that Plaintiff" adequately stated a defamation claim);

12  *Handy v. Wells Fargo Bank, N.A.*, No. CV07-2293-PHX-GMS, 2008 WL 4890758, *2 (D. Ariz.

13  Nov. 12, 2008) (finding an allegation that a defendant had "disseminated and published false

14  statements concerning the Plaintiff which were intended to cast Plaintiff in a false and unfavorable

15  light," in combination with an allegation that plaintiff was terminated for "fraud/monetary losses,"

16  sufficient to defeat a fraudulent joinder claim).

17        "[T]o the extent that [Johnson's] allegations . . . [may] be insufficient to state a claim for

18  defamation in state court, it is possible that such deficiencies [can] be cured by amendment."  See

19  *Morales*, 2013 WL 6018040 at *5 (citing *Padilla v. AT & T Corp.,* 697 F.Supp.2d 1156, 1159

20  (C.D. Cal. 2009) (granting a motion to remand where defendant failed to show that plaintiff would

21  not be granted leave to amend his complaint to cure the asserted deficiency); *Barsell v. Urban*

22  *Outfitters, Inc.,* No. CV 09-02604-MMM-RZx, 2009 WL 1916495, *3 (C.D. Cal. July 1, 2009)

23  ("District courts have also granted motions to remand where the complaint failed to allege

24  outrageous conduct, because it was possible that plaintiff could cure the deficiency by

25  amendment")); see also *Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL

26  2038040, *2 (N.D. Cal. July 19, 2006) ("Cingular does not argue that Burris cannot assert a tort

27  claim for emotional distress against his former supervisor as a matter of law.  Rather, Cingular

28  argues that Burris failed to state a claim for intentional infliction of emotional distress because he

did not allege any extreme or outrageous conduct, a necessary element of this claim. . . . Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency.  Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

Defendants dispute this conclusion for three reasons.  First, they argue that Johnson fails to allege that Dadabhoy's statements were made with malice so as to defeat the common interest privilege set forth in California Civil Code § 47(c).  Section 47(c) defines as privileged any publication or broadcast made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." CAL. CIV. CODE § 47(c).  Under this statute, "a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made without malice."  *Rossitto v. Safeway, Inc.*, No. 12-CV-05857-MEJ, 2014 WL 1047729, *9 (N.D. Cal. Mar. 17, 2014) (internal quotation marks omitted); see also *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 826-27 (9th Cir. 2008) (statements are privileged where "the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest").

Statements made with actual malice defeat the privilege conferred by § 47(c).  See *Noel v. River Hills Wilsons, Inc.*, 113 Cal.App.4th 1363, 1370 (2003) ("The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights" (internal citations and quotation marks omitted)).  The privilege can also "be lost if the defendant abuses the privilege by excessive publication or the inclusion of immaterial matter which ha[s] no bearing upon the interest sought to be protected."  See *Gardner*

14

*v. Shasta County*, No. 06-CV-0106, 2007 WL 3243847, *5 (E.D. Cal. Nov. 1, 2007) (quoting *Deaile v. Gen. Tel. Co.*, 40 Cal.App.3d 841, 847 (1974)).  Johnson alleges the statements were knowingly false, and were made to retaliate against him for reporting that Dadabhoy had engaged in illegal conduct, so as to justify his termination.[45]  He also alleges the statements were made following a reckless investigation by defendants,[46] and that defendants "cause[d] excessive and unsolicited publication of [the] defamat[ory statements] . . . to third persons, who had no need or desire to know."[47]  Such allegations are sufficient to plead malice, at least for purposes of avoiding removal on the basis of fraudulent joinder.  See *Huitron v. U.S. Foods, Inc.*, No. CV 14-05482 MMM-PLAx, 2014 WL 4215656, *5 (C.D. Cal. Aug. 25, 2014) ("Huitron counters that Jimenez acted with malice, and hence that the privilege is unavailable.  Huitron cites his deposition testimony, in which he stated that Jimenez said he was dishonest to retaliate against him for contacting the Occupational Safety and Health Administration ("OSHA").  Such allegations are sufficient to plead malice"); see also *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 962 (9th Cir. 2008) ("In addition, California courts have held that 'ordinarily the privilege is lost if defendant has no reasonable grounds for believing his statements to be true'"); *Gardner*, 2007 WL 3243847 at *5 (privilege "may be lost if the defendant abuses the privilege by excessive publication or the inclusion of immaterial matter which have no bearing upon the interest sought to be protected").

Defendants also maintain that Johnson's defamation claim is barred by workers compensation exclusivity.[48]  The Workers Compensation Act ("WCA") provides that worker's compensation liability "in lieu of any other liability whatsoever to any person . . . shall, without

---

[45]*Id.*, ¶ 57 ("The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff"); *id.*, ¶ 62 ("the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal termination of Plaintiff").

[46]*Id.*, ¶ 63.

[47]*Id.*, ¶ 56.

[48]Opposition at 10.

1   regard to negligence, exist against an employer for any injury sustained by his or her employees

2   arising out of and in the course of the employment."  CAL. LAB. CODE § 3600.  The WCA is

3   generally the "exclusive" remedy for claims against co-employees, and the "sole and exclusive

4   remedy" for claims against employers.  See CAL. LAB. CODE §§ 3601 and 3602.

5         Citing *Yau v. Santa Margarita Ford, Inc.*, 229 Cal.App.4th 144 (2014), defendants contend

6   that the WCA bars defamation claims arising out of and in the course of employment.  *Yau* held

7   that the WCA was the exclusive remedy for an intentional infliction of emotional distress claim

8   based on emotional injuries sustained during the course of employment; it does not discuss

9   whether the WCA precludes defamation claims.   *Id.* at 161 (concluding that an intentional

10  infliction of emotional distress claim for physical and emotional injuries sustained in the court of

11  employment was preempted by the worker's compensation scheme).  "[W]hile the [California]

12  Supreme Court has not explicitly passed on this question, its opinions to date and decisions of the

13  Courts of Appeal all indicate that the Workers' Compensation Act does not preclude a civil action

14  for defamation against one's employer."  See *Operating Eng'rs Local 3 v. Johnson*, 110

15  Cal.App.4th 180, 186-87 (2003).  In *Vacanti v. State Compensation Insurance Fund*, 24 Cal.4th

16  800, 814 (2001), the California Supreme Court observed that "courts have exempted defamation

17  claims from exclusivity because an injury to reputation does not depend on a personal injury."

18  Indeed, the Courts of Appeal have repeatedly and consistently held that defamation claims are not

19  subject to WCA exclusivity.  See *Davaris v. Cubaleski*, 12 Cal.App.4th 1583, 1591 (1993)

20  ("[W]ith regard to those allegedly defamatory statements made while appellant was still employed

21  by Continental, we agree with Howland that the harm from them was not in the nature of personal

22  injury for purposes of the Workers' Compensation Act"); *Howland v. Balma*, 143 Cal.App.3d

23  899, 904-05 (1983) (holding that a slander action against former employer was not barred by

24  exclusive provisions of the WCA since the gist of a slander action is damage to reputation, which

25  it "not a 'personal injury' (i.e., medical or personal injury to the body) or a risk of employment

26  within the purview of the workers' compensation law"); see also *Livitsanos v. Superior Court*, 2

27  Cal.4th 744, 757 n. 9 (1992) (observing that "[a] number of courts have apparently determined

28  that the gravamen of an action for libel or slander is damage to 'reputation,' a 'proprietary' as

distinct from a physical or mental injury, and therefore have concluded that defamation does not lie within the purview of the workers' compensation law"); *Halliburton v. Remington Coll. Denver Campus, Inc.*, No. D049223, 2008 WL 1851060, *13 (Cal. App. Apr. 28, 2008) (Unpub. Disp.) ("Because the underlying basis of Halliburton's emotional distress causes of action is defamation, the gist of which is damage to reputation, the harm flowing is not personal injury or a risk of employment within the purview of the workers' compensation law"); *Shipman v. California Dep't of Corr. & Rehab.*, No. F050317, 2008 WL 44350, *24 n. 13 (Cal. App. Jan. 3, 2008) (Unpub. Disp.) ("It has been held, however, that 'defamatory statements which have no other purpose than to damage an employee's reputation are neither a 'normal part of the employment relationship' nor a risk of employment within the exclusivity provision of the Workers' Compensation Act,' and therefore claims based on those statements are not subject to workers' compensation preemption").[49]

Federal courts applying California law have reached the same conclusion.  See *Washington v. California City Correction Ctr.*, No. 10-CV-02031-OWW-JLT, 2011 WL 336461, *6 (E.D. Cal. Jan. 31, 2011) ("The WCA does not bar Plaintiff's claim for defamation"); *Volovets v. Sprint United Mgmt. Co.*, No. CV 93-03542-VRW, 1994 WL 62085, *3 (N.D. Cal. Feb. 8, 1994) ("Sprint argues that plaintiff's claims against Evans, for intentional and negligent infliction of emotional distress, are exclusively covered by the workers' compensation scheme, thus barring a civil tort suit.  Even assuming that this is true, the court notes that plaintiff may have a valid defamation claim against Evans, since defamation claims apparently are not exclusively governed by the workers' compensation system.  And although plaintiff's first amended complaint does not state a defamation claim against Evans, plaintiff may be able to seek leave to amend at a future date to include such a claim.  Again, the court concludes that there is a possibility that plaintiff

---

[49]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

will be able to recover against defendant Evans").  Defendants' argument that the WCA bars Johnson's defamation claim is therefore unpersuasive.[50]

Finally, defendants cite various exhibits they contend show that Johnson has no viable defamation claim.  Some of the exhibits indicate that Johnson received reviews stating that he met or exceeded his "key targets."[51]  While these exhibits contain no statements that are defamatory, Johnson's complaint does not allege that these particular documents are the basis of his claim.  For that reason, the exhibits do not indicate that Johnson cannot possibly recover for defamation against Dadabhoy.  Moreover, to the extent the performance reviews indicate Johnson was performing well through the end of 2012, they tend to support his allegation that defendants asserted false reasons for his termination.  Cf. *Umamoto*, 2013 WL 2084475, at *6 ("Plaintiffs have alleged that Shirley was terminated due to performance even though Shirley was 'consistently ranked #1 nationally throughout the company in sales' and had 'earned approximately 129 awards in accolades'").

Defendants also proffer several written warnings issued by Dadabhoy.[52]  Dadabhoy asserts in his declaration that the warnings were placed in Johnson's personnel file, and were not disclosed to anyone outside Wells Fargo management.  The warnings reflect reprimands for failure to maintain a professional and productive work environment and for sending inappropriate emails to co-workers charging that they had been dishonest or incompetent.  Performance evaluations or disciplinary actions cannot support a cause of action for defamation unless they "falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible

---

[50]In addition, Johnson alleges that defendants continued to republish the statements and that he was forced to self-publish them following his termination and at least until the time the complaint was filed.  Any statements "made after [Johnson] was terminated can, by no stretch, be deemed to have occurred in the course and scope of [Johnson's] employment."  *Davaris*, 12 Cal.App.4th at 1591; see also *Shipman*, 2008 WL 44350, at *24 n. 13.  For this reason as well, defendants' contention that the WCA bars Johnson's defamation claim lacks merit.

[51]Appendix, Declaration of Imitiaz Dadabhoy ("Dadabhoy Decl."), Exhs. J and K.

[52]Dadabhoy Decl., Exhs. L and M.

18

personal characteristics of behavior." *Jensen v. Hewlett-Packard Co.*, 14 Cal.App.4th 958, 965 (1993). The documents defendants proffer do not appear to corroborate Johnson's defamation claim, because they do not accuse Johnson of the type of conduct identified in *Jensen*; the documents fail, however, to demonstrate that there is no possibility Johnson can state a defamation claim. The Ninth Circuit has made clear that the summary judgment-type evidence that a party adduced in connection with a motion to remand related to allegations of fraudulent joinder can "appropriate[ly be used] only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003) (noting that "the inability to make the requisite decision [as to whether joinder is fraudulent] in a summary manner itself points to an inability of the removing party to carry its burden")). In this case, Johnson alleges that defamatory statements were made both orally and in writing; he also alleges certain content of the statements – e.g., that he engaged in illegal activity – that is not the subject of the written reprimands. Consequently, these documents do not eliminate the possibility that Johnson can prove that Dadabhoy orally published defamatory statements or included them in other writings.

Defendants, moreover, fail to proffer any documents memorializing the reasons for Johnson's termination. The crux of Johnson's defamation claim appears to be that the reasons given for his termination were defamatory, that the reasons were republished on more than one occasion by defendants and that, like the plaintiff in Umamoto, Johnson was forced to republish the reasons for his termination himself.[53] Indeed, Dadabhoy confirms that there is some possibility Johnson can plead a viable defamation claim in his declaration, stating that Johnson was

---

[53]Complaint, ¶ 55 ("These foreseeable republications include[ ] those that Plaintiff was forced and compelled to republish after [his] termination"). See also *id.*, ¶ 19 (alleging that Wells Fargo terminated Johnson without legitimate grounds to do so); *id.*, ¶ 53 (alleging that defendants published statements indicating that Johnson had "violated company policy and/or the law, engaged in misconduct, and expressly and impliedly accus[ed] Plaintiff of potential criminal activity"); *id.* ¶ 57 (alleging defendants published statements that Johnson "was incompetent, engaged in potential criminal activity, and was a poor employee").

terminated for providing false pre-approval letters to potential borrowers.[54]  This suggests that Johnson was terminated for purportedly fraudulent and/or illegal conduct.  As Johnson contends that this and other reasons for the termination given by Wells Fargo were known by defendants to be false, he may be able to state a cognizable claim.

Finally, Dadabhoy asserts that he never communicated with persons outside Wells Fargo regarding Johnson's termination.  Johnson, however, clearly alleges that he did.[55]  Even if Dadabhoy's assertion is true, moreover, it does not preclude all possibility that Johnson can state a defamation claim.[56]  Johnson's allegation of forced self-publication is sufficient to raise a non-fanciful possibility that he can plead a viable claim.  See *Umamoto*, 2013 WL 2084475 at *4 (finding plaintiff's allegation that "based on compelled self-publication defamation, [she] has been compelled to disclose" that she was terminated "due to performance reasons" in the course of "subsequent applications and interviews for new employment" sufficient to raise a non-fanciful possibility that she could state a defamation claim); see also *Alstad v. Office Depot*, CV–94–1400 DLJ, 1995 WL 84452, *7 (N.D. Cal. Feb. 7, 1995) ("Self-publication of an alleged defamatory statement may be imputed to the originator of the statement if 'the person demeaned is operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time

---

[54]Dadabhoy Decl., ¶ 7 ("Wells Fargo terminated Mr. Johnson's employment for withholding information from underwriting to get a loan approved and for providing false pre-approval letters to potential borrowers").

[55]Complaint, ¶ 53 ("Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community"); see also *id.*, ¶ 55 ("Plaintiff is informed and believes and thereon alleges that the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be, foreseeably published and republished by Defendants, their agents and employees, to recipients in the community").

[56]Dadabhoy Decl., ¶ 8 ("I have never spoken (or communicated in any way) with anyone outside of Wells Fargo regarding Mr. Johnson's performance reviews, disciplinary actions, or terminations").

he communicates it to the person defamed,'" quoting *Davis v. Consol. Freightways*, 29 Cal.App.4th 354, 373 (1994)).

For all these reasons, Dadabhoy's declaration and the exhibits defendants proffer fall short of carrying their heavy burden of showing "undisputed facts that would preclude plaintiff's recovery against the in-state defendant." See *Hunter*, 582 F.3d at 1044. Because defendants' assertion that Johnson's claims against Dadabhoy fail as a matter of law is not persuasive, and because they have not shown that "there is absolutely no possibility" Johnson can state a defamation claim against Dadabhoy, they have failed to demonstrate by clear and convincing evidence that Dadabhoy was fraudulently joined as a defendant. Consequently, the court is not free to disregard Dadabhoy's citizenship in determining whether diversity jurisdiction exists. As defendants concede, Johnson and Dadabhoy are both California citizens. Consequently, there is not complete diversity of citizenship, and the court must remand the case to Los Angeles Superior Court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

## C. Johnson's Request For Attorneys' Fees

Johnson seeks attorneys' fees under 28 U.S.C. § 1447(c). "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV–11–165–HZ, 2011 WL 1297960, *1 (D. Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)). "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.'" *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

"Removal is not objectively unreasonable solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Id.* (citing *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)). "Rather, the court should assess 'whether the relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law at the time of removal.'" *Id.* (quoting *Lussier*, 518 F.3d 1066); see also *Patel v. Del*

*Taco, Inc.*, 446 F.3d 996, 999–1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award contained only one state law cause of action; it did not contain any federal claim that could provide the basis for a § 1441(c) removal.  Joinder of a federal claim and a claim for removal of a state court action in a federal complaint cannot effect a § 1441(c) removal.  There being no objectively reasonable basis for removal, the district court did not abuse its discretion in awarding attorney's fees under § 1447(c) to Del Taco").

Johnson contends that attorneys' fees under § 1447(c) are warranted because Wells Fargo ignored "instructions" in prior decisions remanding cases against it by removing this case,[57] and because defendants failed to show that there is no possibility that he can state a claim against Dadabhoy.[58]  The court declines to award attorneys' fees.  Although not ultimately persuasive, the court does not find defendants' arguments so objectively unreasonable as to warrant an award of attorneys' fees.  See *Lussier*, 518 F.3d at1065 (noting that while "[t]here is no question that [the defendant's] arguments were losers[,] . . . removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted"); *Morales*, 2013 WL 6018040 at *6 (declining to award attorneys' fees); *Coastal Const. Co. v. N. Am. Specialty Ins. Co.*, No. CV 10-00206-DAE-BMK, 2010 WL 2816694, *8 (D. Haw. July 14, 2010) ("While the Court concludes that NAS's arguments for fraudulent joinder lack merit, the Court does not find NAS's arguments to be objectively unreasonable as to warrant payment of attorneys' fees and costs").  This is particularly true in light of Johnson's refusal to amend or provide additional specifics to defendants concerning the factual basis of the defamation claim while the case was still pending in state court.

## III.  CONCLUSION

For the reasons stated, the court finds that Dadabhoy was not fraudulently joined as a defendant.  Accordingly, it lacks subject matter jurisdiction to hear the action, and grants

---

[57]Motion at 10.

[58]*Id.*

1    Johnson's motion to remand.  The court denies Johnson's request for attorneys' fees.  Because the

2    court grants Johnson's motion to remand, it denies defendants' motion to dismiss as moot.   The

3    clerk is directed to remand the action to Los Angeles Superior Court forthwith.

4

5    DATED: November 19, 2014

6                                                     MARGARET M. MORROW
                                                      UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28